May it please the Court. Good morning, Counsel. Diane Maris, on behalf of Plaintiff Appellee Menard, we are here to argue that the Commission erred on a matter of law and that the decision was also against the manifest weight of the evidence. That's a matter of law. Could you start off by telling us how they erred as a matter of law? That the evidentiary ruling by the Commission was erroneous and that the proper ruling should have allowed the evidence to be considered. The Commission did not consider our impeachment of the Petitioner at hearing. Why didn't the Commission consider the impeachment? Well, I think they erred on that point, Your Honor. Why didn't they consider it? What was the reason? The reason was that it could not, we did not introduce our statement of the interview between the claimants and Karen Suri of Zurich. So they barred the evidence, right? Excuse me? They wouldn't allow you to introduce the evidence. Well, we didn't offer the transcript of the evidence. What we did was we asked the Petitioner at hearing, well, first, he testified on direct that he was involved in a motor vehicle accident on December 8, 2007. He also made a statement to Karen Suri that he was not. Our position is those are inconsistent statements. So in order to impeach him on that point, we asked him to read the statement from Ms. Suri. He did that, and he said that that refreshed his recollection. We then asked him, you did tell her you were not involved in a motor vehicle accident? And he said he did. So we believe we impeached him properly on that point. In the written decision of the arbitrator, she wrote, while it does not appear he was forthcoming about the motor vehicle accident, it is unclear from the record that he actually lied. For example, the transcript of his interview with the respondent adjuster was not offered in evidence. So it is impossible to assess what weight it should be given. In assessing the claimant's credibility, she found there was no evidence that he was involved in a motor vehicle accident. So it was unclear whether he actually lied. In support of that conclusion, the commission held that because the transcript wasn't offered into evidence, it was impossible to assess. Was it a question and answer transcript? Excuse me? The statement that he gave, was it a question and answer transcript? And I said after reading this, does this refresh your recollection? He said yes. You weren't really refreshing his recollection, you were trying to impeach him, right? Yes. But he said that by reading the transcript, he remembered the answer he gave to her. And he said okay. He said I wasn't in a motor vehicle accident. But the way you conducted that, the arbitrator never heard what the actual question and answer was that was in the recorded statement, right? That's correct. So isn't it perfectly consistent with that, that the arbitrator would say, you know, it wasn't introduced into evidence, so I don't really know the context of it. So I don't know how much weight to give the inconsistent statement. I don't think we need to introduce the actual statement. Well, you don't need to, but it still leaves the arbitrator without the context of what exactly was said. I don't think the case law requires us to do that, Your Honor. I'm at a loss. I've got to pick up one. What narrative did they commit as a matter of law? I think that it's an error in law, Your Honor, to not, she didn't give the recorded statement proper, any weight at all. She said she was going to ignore the impeachment because the statement wasn't offered into evidence. And I think that that as a matter of law is erroneous in that the evidence should have been weighed. Well, let's assume it was. Let me just play. Let me ask you this, because I think you might be able to make the argument that this whole thing about the accident could be a red herring. Follow this logic. Let's assume it could be proven that he had, did in fact have, an accident. What does that in and of itself prove in this case? What does that prove? It shows that he was involved in an accident. And he also was being untruthful in his part of the investigation. Okay. So what? Credibility. I think that being untruthful is a critical. Credibility doesn't mean, because somebody's impeached, doesn't mean they can't recover. That's just something for the commission to weigh. They knew it. But I don't think he did recover. The facts in the transcript don't show that he recovered from that. I don't understand what you mean, he recovered from that. Just so you know. Go ahead. Go on. The fact that somebody has an industrial accident doesn't in and of itself mean they recover. Is that correct? Would you agree with that? I do. There has to be some injury. The fact that somebody has a car accident, does that in and of itself prove there's an injury that could have some bearing on the case? I think it does. If you look at the entire How does an accident in and of itself prove an injury? Tell me that. I think that you can infer by looking at the insurance company, Safeco's insurance records, which has pictures of the vehicle after the accident, that an injury would have occurred. If you also consider the claimant said that he was going 10 miles an hour, I think you can infer that that's inaccurate. If you look at the photos of the accident So the commission has to infer you're suggesting that he must have been injured as a result of this? They have to Why wasn't he being truthful to Karen Suri or Dr. Butler? I think you can infer that he was not being truthful. Well, I think you can make the inference, but again, I'm suggesting it could also be a red herring. The fact that he had an accident could have nothing to do with his medical problems. Otherwise, are you not sort of in the realm of speculation, some speculation? And did you attempt to introduce any evidence to establish in any way that he was injured as a result of this accident? I don't have any evidence that he was, but he went back. He was off work for 10 days, came back to work, and within a few hours of being at work is when the pulling a generator incident occurred. So my client is investigating this. They sent it to their adjuster, and he lies to the adjuster. They sent him to an IME doctor That's your opinion he's lying, but we don't know that for sure. That seems to be disputed, but It's my opinion that he's lying, Your Honor. I would ask the opportunity to address that and convince you of that. It's very important to this point. Let me go over this. He testified he was in an accident. On cross, I asked him, did you speak to Karen Suri? He says, yes. Very unequivocal answers. And you knew she called you to talk to you about the injury and find out what was going on with it. Yes. She asked you whether you were involved in a motor vehicle accident, right? I don't remember that. Well, let me show you the transcript. I showed him the transcript. Mr. Sterling, after reading the transcript, does that refresh your recollection of the conversation? Yes. And you told her you weren't in an accident, didn't you? Yes. So I impeached him, and he made a prior inconsistent statement about the accident. Wait a minute. Wait a minute. You impeached him? I think so, Your Honor. Where did he testify to on direct examination? That he wasn't in an accident. Fine. That's the evidence. Now you're going to impeach that? Did you impeach that? No. You didn't impeach him at all. You accused him. All you proved is he lied to your justice. So what? Does he require to tell her the truth? I think that bears on his credibility. Wait a minute. She's investigating. The commission didn't think so. But they didn't even address it. They said it's impossible to assess. And I'm saying it is possible to assess the weight of that lie. But that's not impeachment. You haven't impeached any testimony of his. Let me go back to my question if I can, okay? Because what you keep saying is that the arbitrator said that you didn't impeach him. I don't think that's what the arbitrator says. Okay. What it says in the arbitration decision is, quote, while it does not appear he was forthcoming about the MVA, motor vehicle accident, it is unclear from the record that he actually lied. For example, the transcript of his interview with the respondent's adjuster was not offered into evidence, so it is impossible to assess what weight it should be given. The arbitrator is saying you impeached him, but I never heard what exact question was asked of him, so it's not clear to me what the context was. I mean, that's ‑‑ I'm saying, why are you calling impeachment? What's impeachment? Impeachment is proof that at some other time you gave statements or testified differently than you are testifying now. And he admitted that he had the accident. That's what you wanted to prove, that he had the accident. You want to go off on this collateral issue that he lied to your adjuster. I mean, we have people in here that tell the adjusters to go take a short jump off a long pier. They're not required to talk to him. And so we lied to him. So what? Well, I think that bears on his credibility. But the commission didn't think so. Let's assume you impeached him for the sake of the arguendo, as it were. Let's talk about what we do know. Are you disputing he had an accident at work on December 18th, 2000? No. So that's not a dispute. He made immediate complaints following the fall at work. Did he not? He did. Okay. There's medical evidence, as I understand it, provided by Espinoza and Butler that make a causal connection, correct? Espinoza, yes. Butler, no. So where is the opposite conclusion clearly apparent, even if you have conflicting medical opinions? You acknowledge there was an accident, immediate complaints, medical treatment, causation opinion. Where's the error? The error is here, Your Honor. Dr. Espinoza's opinion is unreliable. He didn't have complete information about exactly what occurred to this gentleman. Dr. Butler had complete information. Dr. Butler inquired about the motor vehicle accident and he denied it. He said I wasn't in one. Categorically denied it. Dr. Butler offered an opinion that it's more likely that the mechanism of the injury is more consistent with his condition. So I think that the value of Dr. Butler's opinion carries greater weight, significantly more weight. I mean, you didn't want to prove that he didn't have an automobile accident, did you? No. Well, you want to prove he had one. Yes. So how is it relevant that he told somebody at another time that he didn't have one? I think it bears on his credibility. Someone is investigating. But, you know, you can't conduct trials with extraneous. I mean, the next thing you're going to prove, they're going to come in here with evidence that he lied to his eighth grade math teacher. Well, Your Honor, with all due respect, lying to your eighth grade math teacher is immaterial. Lying to an adjuster investigating a claim we submit is material. How is it immaterial? Is there something that says that it's presumed that you will tell an adjuster from an unfriendly insurance company the truth? Now, they have an argument that there's something to be said about him not telling his physician what his mechanics of injury was. Your Honor. But I don't think he's required. With all due respect, I take issue with the characterization that it was an unfriendly insurance company. And I'll tell you why. When he was injured in 2005, he received a settlement, a pro se settlement. They offered him money when they thought it was a legitimate work-related injury. So I respectfully, I take issue with that characterization. Well, I'll let you take issue with it. But the question is, have you got a case that says that he's required to tell the adjuster the truth? I don't. Okay. But I think it bears on credibility. I do think that he had an obligation to tell Dr. Butler the truth. And again, Dr. Butler categorically said he categorically denied he was involved in a motor vehicle accident. Now, on that issue, the petitioner contradicted that, right? Didn't the petitioner testify that he did tell the doctor about the accident? Or am I confused about that? No, I think that's the point, Your Honor. In any event, is there any evidence whatsoever in the record that this motor vehicle caused any injury, actual injury? There is none. How does Dr. Butler bring that? You say Dr. Butler tries to make that connection? Dr. Butler does. Dr. Butler, after stating that he denied being in a motor vehicle accident, he said that the mechanism of injury in a motor vehicle accident is more consistent with the injury here.  He did. Okay. Because we have the claimant saying, Dr. Butler saying, were you involved in a motor vehicle accident? And the claimant says no. Correct? Right. During the exam. And then yet Dr. Butler proceeds to say this type of injury is more likely caused by a motor vehicle accident than the description the claimant gave at the workplace. Yes. Okay. Somebody told Dr. Butler about the motor vehicle. He didn't just. That's right. I know that out of thin air. When I got the case. When I got the car accident. Yeah, I got the IMU report. I didn't write the letter to him, but presumably. And I asked him. Wait, wait, wait. I guess I didn't understand. Okay. Now, let me go back to my last question, though. Butler says he categorically denied being in a motor vehicle accident, but the claimant testified he never asked me that question. All he asked me was, are there any other possible causes for this? Okay. That's what the claimant said. That's what the claimant said. So he did contradict. He contradicted Butler. Yeah. But if you think about it, Butler didn't say he wasn't involved in any other injuries. He categorically denied being involved. That's what Butler says happened. Yes. But that was denied by the claimant. The claimant said he never asked me that question. That's right. He just asked me, are there any other causes? There's a big difference between that and categorically denying that you've been in a motor vehicle accident. Yes. You agree with that, don't you? I do. That's the claimant's statement in rebuttal to Butler, and yet you also have the claimant saying, no, I never told Suri anything either. Right. And then you correct. Counsel, you've had a lot of questions, but your time is up. Okay. You'll have time to move on. Thank you. Counsel, please. Justices, counsel, I'm Joe Horan. I represent Ron Sterling. There are, I think, three reasons why, three main reasons why the decisions of the arbitrator, the commission, and the circuit court should be upheld. And that is, number one, Menard admits through its one witness, Mr. Harris, that the first thing that Ron did, the first work day after his accident, within 48 hours, is he called up Mr. Harris and said, I'm not going to be in work today. I was in an accident. I have one car. I'm single. I don't have transportation, so I'm not going to be able to come in. Secondly, the witness, or the accident where he's pulling on the generator cord and it snaps and he falls to the ground, unlike the information given to Dr. Smallwood. The idea that Ron could concoct all of this to have the thing snap and to fall and hit his head and happen to have somebody watch it while he did it is, in my view, rather preposterous. Well, they're not claiming or disputing that the accident occurred at the workplace, are they? Well, they did at arbitration. I think they conceded today that they had. Yes. But Dr. Butler was not given that information that someone saw him actually have this occur. Dr. Butler doesn't really give a medical opinion that it didn't get caused in the manner in which Ron described. He rather said, well, I'm looking at an unwitnessed accident. I'm looking at a car accident. Probably more likely it would happen in a car accident. Well, that's not really accurate. And as counsel has indicated, there is no information, no fact in the record that Ron sustained any injury in this motor vehicle accident, the one that he told his employer about. It's in the record. Ron did not have a driver's license, which might explain why you would tell a perfect stranger over the phone you would deny that you were driving. And that's in the record. As to Dr. Butler, as the justices pointed out, yeah, Ron said no. He said he didn't ask me if I was in a motor vehicle accident. He asked me if I got hurt in a motor vehicle accident. And Ron stated at page 41, I asked him on redirect, why didn't you tell Dr. Butler you were in a motor vehicle accident? I didn't think it had anything to do with it. I hit a post offense. I had no medical treatment, didn't go to the doctor, and I wasn't hurting. How long was he on for after this accident? That's disputed, actually. According to the – If he wasn't hurt, he probably should have been there at work the next day, right? He testified that he was there three days later after he secured transportation from a co-worker. Oh, so he's explaining his absence by I can't get to work. Yes. It's in the record. He is a single gentleman with one car that was in the repair shop, and that's what he reported to Mr. Harris the Monday morning after the Saturday accident. That's what he told him. Mr. Harris testified that he missed ten days. Ron said, no, I came back after three days. So that's a disputed fact in this case. But with an inference being he just couldn't get to work because he had no way to get to work. Right, and that's exactly what he reported to his employer. You're saying when he called in the first day he missed, he called in and said, I don't have any way to get there. He said, I was in an accident. My car is in the shop. I don't have any way to get in, and I'm requesting some time off, which Mr. Harris acknowledged that's exactly what he said. And nobody, yeah, Mr. Harris didn't testify that he called and said, I got hurt. No. Nobody testified. No one has testified that he got hurt. And there's no emergency room record. There's absolutely nothing. They have a lot of suspicions but absolutely no proof. And really that's what this case is about in my opinion. If Ron has, his doctor, Dr. Espinosa, had recommended surgery. There was a surgery date set of March 24, 2008. Ron has been without the surgery, without benefits for all this long time, and I'm hoping that the panel will uphold the decisions that have gotten us here today so that Ron can receive the treatment that he needs for an injury which was witnessed and did happen at work. Thank you. I guess I still don't understand Dr. Butler here. Was Butler told prior to his examination of your client about an auto accident? Yes. According to counsel indicated that I believe. Yeah, he was. Any other questions? Thank you, counsel. Rebuttal. Just a few points in rebuttal. The issue of Dr. Butler knowing whether it was witnessed or unwitnessed I think is irrelevant. And, in fact, the record is unclear as to who told Dr. Butler that it was unwitnessed. We don't know that he learned that from the employer. It could have been the claimant. It's unclear. So I think it's an irrelevant point. Second, just as a point of clarification, counsel indicates that the petitioner testified that he came back after three days. That's not what the record shows. The record shows he was unclear. He didn't know when he returned. So those are just some follow-up points. But, again, we would ask the court to consider the impeachment I'm sorry, the prior inconsistent statement issue as pivotal in this matter. It's pivotal because it shows a lack of credibility, a lack of truthfulness. It lends credibility to Dr. Butler's report and Dr. Butler's opinion that the mechanism is more consistent with a motor vehicle accident. And then I will leave you with this final request as the court deliberates. Consider the impact, what's shown on the Safeco insurance report. There are files in there. There are records. The records show the damage to the vehicle. I would submit to you, as you idle through traffic at 10 miles an hour, that would not cause the level of damage to that vehicle. I would also ask you to consider the act of starting a lawn mower, the cord ripping and falling backwards. Is that a more severe situation than a motor vehicle accident that caused the level of damage to that vehicle? Where did he fall on, by the way? When he fell backwards, where did he fall on? He fell on the floor. He fell backwards on the floor. It's like if you were in the garage. He didn't fall on the carpet or something. He fell on the floor. He fell on the floor. Thank you. Thank you, Counsel. The court will take the matter under adjustment for discussion.